UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Robert Tardio, | Case No. 18-cv-1446 (WMW/BRT) |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Boston Scientific Corporation U.S. Severance Plan for Exempt Employees, | |
| Defendant. | |

This matter is before the Court on Defendant Boston Scientific Corporation U.S. Severance Plan for Exempt Employees' (BSC Severance Plan) motion for summary judgment. (Dkt. 19.) For the reasons explained below, the Court grants the motion.

## BACKGROUND

Plaintiff Robert Tardio is a former employee of Boston Scientific Corporation (BSC).[1] Between July 2003 and May 2016, Tardio worked as a sales representative for BSC, selling medical-device products, including implantables, externals, and other accessories. Near the end of his employment with BSC, Tardio was a Principal Sales Representative in BSC's Cardiac Rhythm Management division. As an employee of BSC, Tardio participated in BSC's severance benefits plan, an unfunded benefits plan subject to the Employee Retirement Income Security Act (ERISA). This action arises out of a severance-benefits dispute between Tardio and BSC Severance Plan.

The relevant language of BSC's severance-benefits policy provides as follows:

---

[1] BSC is not named as a defendant in this action.

The Plan provides Severance Benefits only in the event of a Layoff. If your employment terminates due to a Layoff while you are a Plan participant, you will be entitled to receive Severance Benefits only if you satisfy <u>all</u> of the following conditions:

- You are given Notice that your employment will be involuntarily terminated due to a Layoff;

- You remain employed by the Company and actively at work until the date determined by the Company to be your last day of work . . .; and

- You continue to honor all contractual obligations you may have to the Company, including, without limitation, any confidentiality and nondisclosure agreement and restrictions on post-employment activities.

**In addition**, to be entitled to receive **Severance Pay** under the Plan, you must sign a **Release Agreement** by the deadline specified in that document, and you must not validly revoke it within the Revocation Period. . . .

To receive Severance Benefits, you must continue to satisfy all applicable conditions and eligibility requirements to the date you receive those benefits, and you must continue to honor all contractual obligations you may have to the Company, including, without limitation, any confidentiality and nondisclosure agreement and restrictions on post-employment activities. . . . If you fail to satisfy an applicable condition or eligibility requirement before all Severance Benefits have been provided to you, you will not be entitled to any Severance Benefits that have not been paid or otherwise provided.

Under the "Layoff" section, the policy provides that:

Regardless of whether you receive Notice, your termination of employment will **<u>not</u>** be considered a Layoff, and you will **<u>not</u>** receive Severance Benefits, if your employment terminates for any reason other than a Layoff. For example, you will **<u>not</u>** be considered to have a Layoff, and, therefore, you will **<u>not</u>** receive Severance Benefits, if your employment terminates for any of the following reasons:

. . .

- Misconduct or other "cause," as determined by the Company in its sole discretion . . . .

On April 4, 2016, BSC advised Tardio that he would be laid off. The layoff notice was formalized in an April 7, 2016 letter. BSC advised Tardio that his employment with BSC would end on May 7, 2016, and that he was "initially eligible" for severance benefits under BSC's severance-benefits policy, which BSC attached to the letter. The letter also referred to "the requirements for continued eligibility," one of which was "[Tardio's] agreement to a 'Release Agreement.' "

BSC sent Tardio a release agreement on May 10, 2016. The release agreement provided a 15-day period of rescission following its signing. And BSC agreed to pay Tardio severance benefits in the amount of $182,120.27 on BSC's regular pay date occurring closest to 30 days after the expiration of the release agreement's rescission period, if Tardio had not exercised his right to rescind the agreement. Tardio signed and returned the release agreement to BSC on May 11, 2016.

On May 4, 2016, two BSC employees arrived at Tardio's home to retrieve the company's medical-device products that were in Tardio's possession. The employees reported that Tardio "was very unprofessional and threw his product onto the ground." One BSC employee recorded Tardio's actions; and both employees reported the incident to their supervisor, Sunil Tripathi, who also supervised Tardio. Tripathi reported the incident to BSC's inventory and human-resources teams the next day.

When asked about the video recording on May 11, 2016, "Tripathi stated that it was not a big deal because most of the inventory has expired and would be scrapped anyway." But as of May 19, 2016, BSC had determined that Tardio's May 4, 2016 conduct caused BSC a total loss valued at $79,500. BSC's Global Security team commenced an

3

investigation into the matter on May 20, 2016. The investigation included interviews with several witnesses, as well as Tardio. During his June 29, 2016 interview, Tardio admitted that he "emptied [BSC] product out of [his] bins" and "on the ground."

On the same day, BSC issued a Notice of Termination for Cause, advising Tardio that his conduct on May 4, 2016, violated the terms of his "Employment Agreement," his "Agreement Concerning Employment," and the BSC Code of Conduct. The notice also advised Tardio that his employment was "terminated for Cause effective May 4, 2016." In a letter also dated June 29, 2016, BSC informed Tardio that, because BSC terminated him for cause as of May 4, 2016, Tardio was ineligible for severance benefits. In a separate letter dated June 29, 2016, BSC offered to settle Tardio's claims for $110,000. Tardio rejected the offer.

Tardio subsequently requested the plan administrator's review of the denial of his severance benefits. In support of his request, Tardio contended that BSC was contractually bound by the release agreement that he signed and returned on May 11, 2016, to pay Tardio full severance benefits of $182,120.27. On November 13, 2017, Gail Beauregard, serving as the plan administrator for BSC Severance Plan, advised Tardio in writing that she concluded from her review of the record that, because his employment had been terminated for cause by BSC effective May 4, 2016, Tardio was not entitled to severance benefits.

Tardio appealed the denial of severance benefits to the BSC Employee Benefits Committee on November 17, 2017. Tardio advanced the same argument in his appeal, namely, that BSC was contractually bound by the May 11, 2016 release agreement to pay

4

him the claimed severance benefits. After reviewing the denial of his severance benefits *de novo*, the committee denied Tardio's claim on January 17, 2018.

Tardio commenced this lawsuit against BSC Severance Plan on May 25, 2018, alleging a violation of ERISA, 29 U.S.C. § 1132, and seeking payment of severance benefits in the amount of $182,120.27. Tardio now argues, as he did during his administrative review and appeal, that the May 11, 2016 release agreement entitles him to the initial severance-benefits amount. On May 22, 2019, BSC Severance Plan brought the pending motion for summary judgment, in which BSC Severance Plan contends that Tardio's claim fails as a matter of law because the plan's decision to deny Tardio's benefits claim was reasonable.

## ANALYSIS

Summary judgment is properly granted when the record before the district court establishes that there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, a district court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *See Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014). A party opposing summary judgment on the ground that a fact is genuinely disputed must "submit affidavits, depositions, answers to interrogatories, or admissions on file and

designate specific facts" supporting that assertion. *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 831–32 (8th Cir. 2008); *see* Fed. R. Civ. P. 56(c)(1)(A).

An ERISA plan beneficiary has the right to judicial review of a benefits determination. *See* 29 U.S.C. § 1132(a)(1)(B). When reviewing the denial of ERISA benefits, courts apply a *de novo* standard unless the benefit plan grants the plan administrator discretionary authority to determine benefits eligibility. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Jackson v. Prudential Ins. Co. of Am.*, 530 F.3d 696, 701 (8th Cir. 2008). If such discretionary authority is granted, the decision of the plan administrator is reviewed for an abuse of discretion. *Waldoch v. Medtronic, Inc.*, 757 F.3d 822, 829 (8th Cir. 2014).

The severance-benefits policy at issue here provides that the "Plan Administrator has the discretionary authority to construe and interpret all Plan provisions and to decide all issues arising under the Plan, including issues of eligibility, coverage, and benefits." Because this policy language unambiguously grants the plan administrator "discretionary authority" to determine eligibility and entitlement to benefits, the abuse-of-discretion standard applies.

Tardio argues that the plan administrator committed an abuse of discretion by denying him the claimed severance benefits. Tardio maintains that his severance benefits were "due" before BSC reclassified his termination and determined that Tardio was no longer eligible for the benefits. BSC Severance Plan counters that signing the release agreement was only one of several conditions of Tardio's eligibility for benefits. But Tardio is not entitled to the severance benefits that he claims for two reasons, BSC

6

Severance Plan argues. First, Tardio's employment was terminated for cause, not as a result of a layoff. And second, Tardio failed to honor all of his contractual obligations with BSC.

When applying the abuse-of-discretion standard of review, a district court upholds a plan administrator's benefits-eligibility and benefits-entitlement determinations when the plan administrator offers a "reasonable explanation for its decision, supported by substantial evidence." *Ratliff v. Jefferson Pilot Fin. Ins. Co.*, 489 F.3d 343, 348 (8th Cir. 2007). This analysis requires a court to determine whether a "reasonable person *could* have reached a similar decision . . . not that a reasonable person *would* have reached that decision." *Phillips-Foster v. UNUM Life Ins. Co. of Am.*, 302 F.3d 785, 794 (8th Cir. 2002) (internal quotation marks omitted). The plan administrator's decision must be supported by substantial evidence, which is more than a scintilla of evidence, but less than a preponderance of the evidence. *House v. Paul Revere Life Ins. Co.*, 241 F.3d 1045, 1048 (8th Cir. 2001). The district court also considers the financial conflict of interest that the plan administrator may have when, as here, the plan administrator also is the insurer responsible for paying benefits claims. *Whitley v. Standard Ins. Co.*, 815 F.3d 1134, 1140 (8th Cir. 2016). But this conflict of interest does not alter the abuse-of-discretion standard of review. *Spizman v. BCBSM, Inc.*, 855 F.3d 924, 928 (8th Cir. 2017).

BSC Severance Plan explained that Tardio is ineligible for severance benefits under BSC's severance-benefits policy because Tardio's conduct on May 4, 2016, led to the reclassification of his termination as "for cause" effective on the same date. BSC Severance Plan issued Tardio a summary of the facts surrounding the May 4, 2016 incident

and notified Tardio of BSC's subsequent reclassification of his termination from "due to a layoff" to "for cause" as a consequence of his conduct on that day.  BSC Severance Plan also recited the relevant provision of the severance-benefits policy, which states that:

> Regardless of whether you receive Notice, your termination of employment will **not** be considered a Layoff, and you will **not** receive Severance Benefits, if your employment terminates for any reason other than a Layoff.  For example, you will **not** be considered to have a Layoff, and, therefore, you will **not** receive Severance Benefits, if your employment terminates for any of the following reasons:
>
> . . .
>
> - Misconduct or other "cause," as determined by the Company in its sole discretion . . . .

(Emphasis in original.)  Applying this provision to the facts of Tardio's termination, which BSC reclassified as "for cause" on June 29, 2016, BSC Severance Plan concluded that Tardio is ineligible for severance benefits.  And BSC Severance Plan maintained this position after a *de novo* review of the matter on Tardio's administrative appeal.

Although it was not required to do so, BSC Severance Plan also evaluated the basis for BSC's reclassification of Tardio's termination.  *See Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 345 (6th Cir. 2011) (holding that, when a condition for benefits is clearly stated in the plan policy, the plan administrator "need[s] to look only at the stated reason for [the employee]'s termination, not the underlying conduct, to determine if such reason fell under the list of exclusions outlined by the Plan").  After reviewing the extensive documentation from the investigation of the May 4, 2016 incident that BSC's Global Security team conducted between May 20, 2016, and June 29, 2016, BSC Severance Plan concluded:

> While the Plan provides for [BSC] "in its sole discretion" to define the conduct that can provide cause for termination, the Committee finds that the totality of the evidence, particularly the video footage of Mr. Tardio throwing and dumping [BSC] medical device products that he was required to return, amply supports the underlying [BSC] decision that Mr. Tardio's employment should be terminated for cause retroactively effective as of the date that conduct occurred, May 4, 2016.

BSC Severance Plan also considered, and rejected, Tardio's argument that the release agreement, which he signed on May 11, 2016, required BSC to pay him severance benefits that he had acquired as of that date. In rejecting this argument, BSC Severance Plan advised Tardio that ERISA preempts state-law contract claims and requires BSC Severance Plan to follow the terms of the written plan document. Indeed, BSC Severance Plan's determination is legally sound. *See, e.g.*, *Fink v. Dakotacare*, 324 F.3d 685, 688–89 (8th Cir. 2003) (observing that the Supreme Court of the United States has held that ERISA's section 1132(a) is "the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits" (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987)).

The Court also finds Tadio's argument unpersuasive. Here, Tardio persists in arguing that, because he signed the release agreement on May 11, 2016, his severance benefits were "due" sometime after the expiration of the agreement's rescission period, but *before* June 29, 2016, when BSC reclassified his termination and determined that he was no longer eligible for the benefits.[2] This argument, which is based on contract-law

---

[2] The parties dispute the date when Tardio should have received the severance benefits. Under the release agreement, BSC agreed to pay Tardio severance benefits on BSC's regular pay date occurring closest to 30 days after the expiration of the release agreement's rescission period, provided that Tardio had not exercised his right to rescind. Because Tardio signed the release agreement on May 11, 2016, the expiration of the release

9

principles, is unsupported by the express terms of the plan policy that state, "If [Tardio] fail[s] to satisfy an applicable condition or eligibility requirement before all Severance Benefits have been provided to [him], [Tardio] will not be entitled to any Severance Benefits that have not yet been paid or otherwise provided." For these reasons, the Court rejects Tardio's argument.

BSC Severance Plan has provided a reasonable explanation for its decision that is supported by the facts in the record. Under the express terms of the severance-benefits policy, signing the release agreement is only one of several conditions that must be met to render Tardio eligible for severance benefits. In addition, the policy expressly conditions benefits eligibility on a policy-holder's employment *not* being terminated for cause. Tardio does not, and cannot, dispute that the termination of his employment was reclassified as "for cause" effective May 4, 2016. And upon its review of BSC's investigation record, BSC Severance Plan concluded that BSC did not abuse its discretion by terminating Tardio's employment for cause or misconduct based on Tardio's conduct on May 4, 2016. A reasonable person *could* reach the same determination that BSC Severance Plan reached—specifically, that Tardio is not entitled to the claimed severance benefits.

---

agreement's rescission period was May 26, 2016. Thus, under the release agreement, the severance benefits should have been paid to Tardio on the regular pay date occurring closest to June 25, 2016.

Tardio maintains that this pay date was June 24, 2016, but he cites nothing in the record to support his position. BSC Severance Plan asserts that June 24, 2016, was not a regular pay date at BSC; instead, the regular pay date occurring closest to June 25, 2016, was July 1, 2016. BSC Severance Plan cites Beauregard's declaration to support its position. Even under Tardio's contract theory, however, it cannot be disputed that severance benefits would not have been "due" until July 1, 2016, *i.e.*, *after* BSC had reclassified Tardio's termination.

Because the record strongly supports the reasonableness of the BSC Severance Plan determination, as well as the decision to reclassify Tardio's termination as "for cause," BSC Severance Plan's potential conflict of interest does not tip the scale in Tardio's favor. *See, e.g.*, *Estate of Schwing v. Lilly Health Plan*, 562 F.3d 522, 526 (3rd Cir. 2009) (holding that where "an abundance of evidence" of the claimant's misconduct supports the denial of the claim, analysis of any structural conflicts of interest or procedural irregularities is unnecessary, because such factors would not "tip[ ] the scales" in favor of finding an administrator's abuse of discretion). The Court upholds BSC Severance Plan's determination because the determination is supported by a "reasonable explanation" and more than "substantial evidence" in the record. *See Ratliff*, 489 F.3d at 348.

As no material fact is genuinely disputed, summary judgment is proper in this case. The Court grants summary judgment in favor of BSC Severance Plan and upholds BSC Severance Plan's benefits determination under ERISA.

## ORDER

Based on the foregoing analysis and all of the files, records, and proceedings herein,

**IT IS HEREBY ORDERED** that Defendant Boston Scientific Corporation U.S. Severance Plan for Exempt Employees' motion for summary judgment, (Dkt. 19), is **GRANTED**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 14, 2020	s/Wilhelmina M. Wright
	Wilhelmina M. Wright
	United States District Judge